**Eli Chevalier Et Al v. Edward Tyler Et Al**

[132 A2d 433]

January Term, 1957.

Opinion Filed May 7, 1957.

*John G. Kissane, A. Pearley Feen* and *Paul D. Sheehey* for the defendants.

*William B. Goldsbury* for the plaintiffs.

**Hulburd, J.** When this case was here originally, it was determined that the defendants had an implied easement to discharge sewage from their hotel property onto the plaintiffs' "25 acre piece". The defendants' right in this regard, however, was held to be limited to the situation as it existed on and prior to October 25, 1943, the date of the conveyance to the plaintiffs. It was pointed out that the owner of an easement cannot materially increase the burden of it upon the servient estate, nor impose a new or additional burden thereon. Accordingly, the case was remanded for a determination of the extent of the discharge or overflow onto the "25 acre piece" from the sewage system of the plaintiffs' Franklin House during the lifetime of

Matilda Cadorette (plaintiff's grantor) and prior to October 25, 1943, the date of the conveyance to the plaintiffs. This was the sole issue for hearing on remand and, once determined, a decree was to issue accordingly. *Chevalier* v. *Tyler*, 118 Vt 448, 111 A2d 722. Obviously, the extent of the discharge or overflow had not been established in the first hearing for if that had been so, no remand would have been necessary for that purpose.

This case now comes to us again, following a hearing by the chancellor in accordance with the remand, in which the following findings were made.

"1. The "twenty-five acre piece" in question was purchased by the plaintiffs from the estate of Matilda Cadorette on October 25, 1943, and is located easterly of the main highway known as U. S. 7 and the Central Vermont Railroad right of way.

"2. The defendants acquired their hotel property . June 22, 1944.

"3. Prior to October 25, 1943, and for a time thereafter, the sewage and water resulting from the operation of the hotel property drained easterly into two cesspools, one located on plaintiffs' twenty-five acre piece easterly of the railroad right of way, this was the so-called main cesspool, and a second, located south of a tennis court and westerly of the railroad right of way.

"4. Sometime during the year of 1945, the day, week or month not appearing in evidence, the defendants installed a septic tank and the use of the main cesspool on plaintiffs' land was discontinued.

"5. The septic tank was installed on the railroad right of way and was designed to eliminate sewage and reduce the flowage onto plaintiffs' twenty-five acre piece.

"6. That prior to the installation of the septic tank the sewage, water and waste matters from the hotel property was conveyed underground to the two cesspools, i.e., the main cesspool on plaintiffs' property and the one located south of the

tennis court, and was disposed of through these cesspools by seepage.

"7. The extent of overflow on plaintiff's twenty-five acre piece resulting from operations of the Franklin House properties prior to October 25, 1943 was a small damp area surrounding the main cesspool for a radius of approximately twelve to fifteen feet from the cesspool.

"8. There was no overflow on the plaintiff's twenty-five acre piece from the cesspools which made up the sewer system of the Franklin House during the lifetime of Matilda Cadorette and prior to October 25, 1943.

"9. There was no sewage overflow on the twenty-five acre piece in question prior to October 25, 1943 except that referred to in Number 7 of these findings.

"10. The Supreme Court, by its mandate issued at the January Term 1954, having limited the issue on remand to a determination of the extent of the overflow of sewage on plaintiffs' twenty-five acre piece prior to October 25, 1943 resulting from operation of the Franklin House hotel properties, we are making no finding as to what extent plaintiff's property is presently being overflowed from the Franklin House sewer system in seasons of operation, or the causes or reasons for such overflow, notwithstanding evidence was introduced without objection on this phase of the case."

The defendants excepted to findings 6, 7, 8 and 9 on the ground that each is "not warranted or supported by the evidence and is contrary to the evidence in the case and is a conclusion not warranted by the evidence and is opposed to the law of the case * * * ."

Eli Chevalier, Roger Chevalier and Wilfred Cadorette all testified as to the matters set forth in findings 6-9 and their testimony is substantially all to the same effect and brings out the situation prior to October 25, 1943, viz: that the hotel ran its sewage by underground tile into two cesspools; one, south of the tennis courts on the hotel property, and the other on the plaintiffs' "25 acre piece".

■ The two cesspools were independent having no tile connection between them. Sewage matter emptying into the tennis court cesspool was absorbed there and sewage matter coming to the "25 acre piece" went into the cesspool there which had a capacity, as Wilfred Cadorette testified, "more than sufficient for the amount of sewage dumped into it," that is, it was "adequate to dispose of the sewage at that time by seepage alone." The testimony of Roger Chevalier was to the same effect. When asked about the overflow from the main cesspool on the "25 acre piece", he replied, "There was no real overflow. There was dampness, muddiness in that area but there was no flow of water." The dampness surrounding this cesspool had "a radius of ten or fifteen feet." Eli Chevalier's testimony also confirmed the fact that there was no surface flowage of sewage prior to 1943 but only seepage as testified to by the other witnesses. This testimony abundantly supports the chancellor's findings Nos. 6, 7, 8 and 9. And no evidence was introduced by the defendants to the contrary. The defendants claim that at the original hearing before the chancellor some of the evidence concerning the discharge of sewage on the "25 acre piece" is at variance with the finding of the chancellor here as to the extent of the overflow prior to 1943. As we have already pointed out, no conclusive finding on this aspect of the case was made at the original hearing and it was for that very reason that a remand became necessary. The defendants had an equal opportunity with the plaintiffs to produce evidence on the point at issue. The findings of the chancellor are well supported by the evidence produced before him and are not opposed to what the defendants call the "law of this case" in any applicable sense of the term. The law of the case was that the extent of discharge of sewage prior to October 25, 1943 was yet to be determined. This the chancellor has now done on evidence which warrants the findings in question. The defendants' exceptions to them are not sustained.

The defendants did not except to findings No. 7 and 8 as being inconsistent with one another. None the less their apparent inconsistency prompts us to observe that they are actually not in conflict. By "8" the chancellor means that the cesspools did not run over. Finding 7 should be read "The ex-

tent of overflow (if you want to call it that in accordance with language employed by counsel) on the plantiffs' "25 acre piece, etc." In other words, there was seepage but no overflow except in a generalized sense of the word. When the meaning clearly intended is ascribed to the words used, all inconsistency disappears. As we have pointed out earlier, no exception was taken on this ground and neither party has been put to disadvantage by looseness of language.

■ We now turn to chancellor's finding No. 10. In it we have not so much a finding as a refusal to find. The defendants introduced evidence as to the present reduced capacity of the hotel and its shortened operating season, all for the apparent purpose of showing that by reason of these factors the flowage of sewage on the "25 acre piece" would be correspondingly diminished. The chancellor took the position that such evidence was of no assistance in determining the extent of sewage discharge prior to 1943. In this he was sound and his refusal to make findings along the line requested was without error. As we stated in the former opinion in this case, *Chevalier* v. *Tyler, supra,* 118 Vt 488 at page 453, 111 A2d 722 at 725, "conditions and facts as they existed on October 25, 1943, not at the time of the trial, are controlling." The evidence introduced by the defendants was anticipatory. The hearing before the chancellor was for the purpose of determining the extent of the easement as fixed by conditions in 1943 and for a decree accordingly. That is all.

The defendants' final exception is to the decree. The essential part of it reads as follows:

"It is hereby ORDERED, ADJUDGED AND DECREED;

That the extent of the overflow onto the 25-acre piece owned by the plaintiffs resulting from the operation of the Franklin House properties, prior to October 25, 1943, the date of the conveyance to the plaintiffs, was a small damp area surrounding the main cesspool located on the 25-acre piece for a radius of approximately 12 to 15 feet from the cesspool;

That the defendants, their servants, agents, heirs and

assigns, are hereby permanently enjoined from overflowing the 25-acre piece owned by the plaintiffs except to the extent that existed prior to October 25, 1943, as hereinbefore set forth;

That the plaintiffs, their servants, agents, heirs and assigns are hereby permanently enjoined from interfering with the use of the sewage system of the Franklin House within the extent that existed prior to October 25, 1943, as hereinabove set forth."

It is at once apparent that the decree is squarely based upon finding No. 7. No question can be raised on that account. The defendant's difficulty arises not from a failure of the findings to support the decree, but, once again, from future problems resultant from certain changes made to the premises since 1943. Since that date, the defendants have installed a septic tank, and the plaintiffs, on their part, have dug a drainage ditch along by the main cesspool. Admittedly both of these factors are going to make it more difficult to determine, at any given time, to what extent, if any, the defendants may be exceeding their easement, but such factors in no way operate against the propriety of the decree below, nor do they render it inconsistent with the mandate of this Court. The defendant's exception to the decree is not sustained.

No error has been made to appear. The decree stands *affirmed*.